# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br>YBA NINETEEN, LLC,<br>    Debtor.<br><br>YBA NINETEEN, LLC,<br>    Appellant,<br>v.<br>INDYMAC VENTURE, LLC,<br>    Appellee. | Civil No. 13cv1326-WQH-RBB<br>Bankruptcy No. 13-00968-LA11<br><br>**ORDER** |

HAYES, Judge:

    The matter before the Court is the appeal of the "Order on Debtor's Emergency Motion for New Hearing under FRBP Rule 9023; to Alter or Amend the Order of the Court under FRBP Rule 9023; and, in the Alternative, Motion for Reconsideration under FRBP Rule 9024," issued by the Bankruptcy Court on June 6, 2013 ("June 6, 2013 Order"). (ECF No. 1).

## I.  Background

The real property at issue in this appeal is commonly known as 5955 La Jolla Corona Dr., La Jolla, California ("Property"), and is owned by Debtor/Appellant YBA Nineteen, Inc. ("YBA").

On January 31, 2013, YBA filed the chapter 11 bankruptcy petition. At the time the petition was filed, a non-judicial foreclosure sale of the Property was scheduled for February 1, 2013. (ECF No. 2-2 at 14). The foreclosure sale was postponed due to YBA's bankruptcy filing. *Id*. In its bankruptcy schedules accompanying the petition, YBA scheduled the Property as having a current market value of $1.5 million. (ECF No. 2-3 at 8). YBA stated in the schedules that the "[v]alue stated as is due to construction defects. Value would be adjusted significantly upward if all repairs are made." *Id*. In the schedules, YBA stated that Appellee IndyMac Venture LLC ("IndyMac") had a secured claim on the Property of $3,810,518. *Id*. at 8, 12.

On April 10, 2013, IndyMac filed a Motion for Relief from Automatic Stay. (ECF No. 2-2 at 5). IndyMac stated that relief should be granted because IndyMac's interest in the Property is not adequately protected; YBA has no equity in the Property; "Debtor's failure to abate water intrusion results in continuing damage to collateral"; and "[b]ad faith filing arising from unauthorized prepetition transfers of property into single purpose entity." *Id*. at 7.

On April 25, 2013, YBA filed an opposition to IndyMac's Motion for Relief from Automatic Stay. (ECF No. 2-3 at 53). YBA stated that YBA is willing to make adequate protection payments, the Property is necessary for a reorganization, and no bad faith exists.

On May 2, 2013, IndyMac filed a reply in support of the Motion for Relief from Automatic Stay. (ECF No. 2-8 at 13). In its reply brief, IndyMac stated that cause for lifting the automatic stay existed under 11 U.S.C. § 362(d) "because IndyMac lacks adequate protection, there is no prospect of reorganization and this case is a two-party dispute having all the elements of a bad faith filing." *Id*. at 15. IndyMac contended that it lacked adequate protection because "the Property is continuing to suffer water and moisture intrusion through

construction defects in the Property's numerous ocean facing windows." *Id*. at 16. IndyMac contended that YBA had no prospect of an effective reorganization, stating:

> IndyMac has the burden of proving the Debtor lacks equity in the Property. IndyMac has satisfied that burden through the Debtor's admission in its schedules that the Property is worth only $1.5 million. Since IndyMac's claim stands at almost $4 million, the Debtor clearly lacks equity in the Property. ... YBA fails to explain precisely how it will remediate the water damage and timely complete construction of the Property to place the Property in position to be sold. In any such sale, IndyMac retains credit bid rights as a matter of law. Since IndyMac is presently undersecured by $2.5 million, Debtor cannot propose a feasible plan. As it is Debtor's burden to prove an effective reorganization is in prospect, Debtor has failed to carry its burden of proof.

*Id*. at 21, 23 (citations omitted). IndyMac contended that "YBA's case is a bad faith filing" which was filed for no reason other than to delay IndyMac's foreclosure after YBA's principal, Kamran Banayan, lost in state court litigation against IndyMac. *Id*. at 21. IndyMac contended that all of the "factors demonstrating bad faith" are present. *Id*. at 19 (citing *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986); *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986); *In re Can-Alta Props., Ltd.*, 87 B.R. 89, 91 (9th Cir. BAP 1988); *In re Stolrow's Inc.*, 84 B.R. 167, 171 (9th Cir. BAP 1988)).

On May 7, 2013, YBA filed a supplemental submission in opposition to the Motion for Relief from Automatic Stay. (ECF No. 2-8 at 84). Included in the supplemental submission was an appraisal of the Property dated May 1, 2013 and performed by Ross C. Bouman, a California State Licensed Appraiser. (ECF No. 2-9 at 32). Bouman arrived at an appraised value of $5,800,000, subject to the condition that the Property is appraised as "turn key," with all finished materials installed and all features requiring repair assumed to have taken place. *Id*. at 27. Attached to the "turn key" appraisal was an invoice indicating that the "order date" of the appraisal was April 22, 2013. *Id*. at 59.

On May 9, 2013, the Bankruptcy Court conducted a hearing on the Motion for Relief from Automatic Stay. (ECF No. 3 at 60). At the hearing, counsel for YBA stated:

> [W]e're the only ones that provided any evidence of what the value can be when it's repaired. The one appraisal that we did submit — it does come in at 5.8 million. We did have a preliminary indication from another appraisal. Their appraisal isn't done yet, but it's coming. And this is a preliminary hearing. And under those circumstances, we believe that the Court should set a matter of adequate protection, set a final hearing and have all these factors

fleshed out in that hearing.

*Id.* at 77. The Bankruptcy Court stated:

> I think the problem ... is that your client is focusing on the value as it could be, not the value as it is; and the lender has made clear that it's prepared to accept the value as it is, which is the $1.5 million that Mr. Banayan believes that it is worth at this point in its unrepaired state. But the value — as we know, it's a moving target in property, and I think there's more than just the issue of value here when looking at the stay relief motion. There is, I believe, a question of whether or not this bankruptcy case is a bad faith filing, and because when one looks at the *Arnold* factors, *Can-Alta* factors, *Stolrow* factors, this case does hit nine out of the ten of them, and that's unfortunate for Mr. Banayan. ...
>
> There's one asset. The secured creditor's lien is more than double of the admitted fair market value admitted by the debtor. ... The bankruptcy does, as you describe it, offer a possibility of forestalling a foreclosure, but I think the equities here are such that given the history of litigation between the parties over this issue, the fact that this property is — I don't want to use the term 'underwater' — is overencumbered is one which can't be denied....
>
> I agree this is not a new debtor syndrome. The debtor was not created on the eve of filing; in that respect it does not resemble the various cases where these factors have been discussed. But what is troubling is when one sees how the title went back and forth over time. Admittedly it has been in the debtor since — I think the date was 2009, and there is some dispute as to whether or not the creditor's predecessor was aware of these transfers and condoned them in order to make further advances on the loan. So the Court is not finding that the new debtor syndrome is present here. But this is a bankruptcy that appears to the Court to be one that is solely for the benefit of Mr. Banayan retaining this truly spectacular and beautiful house.... But I think that unless some kind of repair that is satisfactory to the lender would get this house sold quickly, and take out the lender's ... almost $4 million in debt, this case is — seems to be stalled, and for the reasons that are cited in the reply brief, I'm going to grant stay relief.

*Id.* at 77-80.

On May 23, 2013, the Bankruptcy Court entered an Order granting the Motion for Relief from Automatic Stay, terminating the automatic stay for all purposes as to IndyMac in connection with the estate's and YBA's interest in the Property. (ECF No. 2-9 at 62). The Order was stayed for 14 days pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3). *Id.* at 63.

On May 29, 2013, YBA filed an "Emergency Motion for New Hearing under FRBP Rule 9023; to Alter or Amend the Order of the Court under FRBP Rule 9023; and, in the Alternative, Motion for Reconsideration under FRBP Rule 9024" ("Motion for Reconsideration"). (ECF No. 2-10 at 1). YBA stated:

> After the [May 9, 2013] hearing was concluded, the Debtor received an appraisal from Ross C. Bouman, SRA, establishing a current, 'as is' value for the Subject Property. This appraisal was not available at the hearing and was received by Debtor on May 14, 2013.... The appraisal shows that the Debtor has equity in the Subject Property, setting a current, 'as is' value of $5,100,000. The valuation came as a shock to the Debtor and Mr. Banayan, but it has given the Debtor a potential life line for it to save this valuable, unique and beautiful property. The Debtor only asks that the Court consider this newly available evidence and give the Debtor the desperately and equitably necessary opportunity for Debtor to save the Subject Property for the benefit of all parties involved.
>
> Debtor had previously requested the valuation on the Subject Property on an 'as is' basis but, as explained by Mr. Bouman in his declaration, the 'as is' valuation was delayed for various reasons and was unavailable at the time of the hearing.

*Id*. at 3-4. YBA stated that IndyMac had scheduled a trustee's sale of the Property for June 10, 2013. *Id*. at 5.

Attached to the Motion for Reconsideration is a declaration from Bouman stating:

> I have been engaged to perform two appraisals of the [Property]. I initially performed an appraisal of the Subject Property and arrived at an appraised value by the Sales Comparison Approach of $5,800,000.00, subject to the condition that the property is appraised as 'turn key' and all interior and exterior finish materials are installed and properly functioning and all deferred maintenance and features requiring service or repair are assumed to have taken place. This appraisal was submitted to the Court prior to the relief from stay hearing on May 9, 2013.
>
> I have also personally performed an appraisal of the Subject Property on an 'as is' basis. My second report was delayed due to personal time constraints, researching and reviewing stigmatic loss date, and reviewing construction cost information for the cost to complete the unfinished items and repair defective construction. I then prepared a second Appraisal Report for the Subject Property in the ordinary course of business.... The contents of the Appraisal are true and accurate to the best of my knowledge as of April 25, 2013, the date of value. The second report, dated May 14, 2013, was submitted in as timely a fashion as possible given the magnitude of the assignment and the time needed to research and review data....
>
> I arrived at an appraised value by the Sales Comparison Approach of $5,100,000.00, subject to the condition that the property is appraised 'as is.'

*Id*. at 17-18. Attached to Bouman's declaration is the "as is" appraisal, which deducted $500,000 from Bouman's previous appraisal "based on the attached construction cost estimate to complete the construction and repair the previous installation defects and remedy the mushroom and mold growth." *Id*. at 28. The "as is" appraisal deducted $250,000 based on "stigma and inconvenience." *Id*. The appraisal report stated:

> The additional stigma and inconvenience adjustment reflects the effort required to oversee the needed construction by a potential buyer but also a stigmatic loss as homes with defects, even though ultimately repaired, do not typically command the same price as a home, all other factors being equal, without previous defects or issues. The magnitude of this adjustment is subjective as market data for distressed homes varies greatly depending on the nature and severity of the defect, the price range and location of the improvements, the cost to cure (if curable) versus the value of the property, and the likelihood or potential for reoccurrence. You appraiser relied on his professional experience and conversations with other real estate professionals for input. No consensus or concrete data was noted or located. The adjustment above is considered reasonable considering the nature of the defect, the magnitude of the defect relative to the overall value of the property, the cost to cure, and the likelihood of reoccurrence.

*Id*. Attached to the "as is" appraisal report is an invoice indicating that the "order date" of the appraisal was April 22, 2013. *Id*. at 59.

In the Motion for Reconsideration, YBA stated: "Based upon the new evidence, the Debtor through Mr. Banayan is willing and able to pay immediately to the Movant the sum of $200,000 and to recommence payments of $11,500 per month as and for adequate protection. (The monthly payments based on approximately $3,950,000 in debt times the contractual 3.5% interest rate)." *Id*. at 10. YBA stated: "Arguably, because Movant is fully secured, it is [not] entitled to the ongoing accrual of interest, penalties and such, the Movant's position is additionally encumbering the Subject Property's equity over time, but Movant's position is not becoming less secured." *Id*. at 11. In the Motion for Reconsideration, YBA requested that "the Court re-open the matter and take one of three available actions: 1. Set aside the Order and set a new evidentiary hearing to consider the newly available evidence; 2. Modify and amend the Order to reverse the Court's previous finding that the Debtor has no equity in the Subject Property and re-enter the Order denying relief from the automatic stay; or, 3. Grant the Debtor relief from the Order by reinstating the automatic stay as to the Subject Property." *Id*. at 13-14.

On June 3, 2013, IndyMac filed an opposition to YBA's Motion for Reconsideration. (ECF No. 2-11 at 2). On June 5, 2013, YBA filed a reply to IndyMac's opposition. (ECF No. 2-11 at 84).

In the June 6, 2013 Order, the Bankruptcy Court denied the Motion for

Reconsideration. (ECF No. 2-11 at 94). The June 6, 2013 Order states, in its entirety:

> Not approved. Argument in support of reconsideration motion ignores that [the] Court also premised stay relief on 'cause' (see transcript attached to opposition filed by IndyMac). Further, there is no 'newly-discovered' evidenced that could not have been discovered pre-hearing; Debtor merely asked the appraiser for different information that he could have provided.

*Id.*

On June 6, 2013, YBA filed a Notice of Appeal, and on June 7, 2013, YBA filed an election to have the appeal heard by this Court. (ECF No. 1). YBA stated that it was appealing the June 6, 2013 Order. *Id*. at 1.

On June 7, 2013, YBA filed an Ex Parte Motion for Stay Pending Appeal. (ECF No. 2). On June 7, 2013, IndyMac filed an opposition to the Ex Parte Motion for Stay Pending Appeal. (ECF No. 3).

On June 10, 2013, the Court entered an Order granting the Ex Parte Motion for Stay Pending Appeal. (ECF No. 4). The Court stated: "Pursuant to Federal Rule of Bankruptcy Procedure 8005, a stay is hereby imposed as against Appellee Indymac Venture, LLC against taking any further action as against the Appellant's real property, commonly referred to as 5955 La Jolla Corona Drive, La Jolla, California 92037, including completing a foreclosure sale on June 10, 2013, pending resolution of Appellant's appeal before this Court or until otherwise ordered by this Court." *Id*. at 6. The Court set an expedited schedule for the appeal. *Id*. at 6-7.

On June 14, 2013, YBA filed a brief in support of its appeal. (ECF No. 5). YBA contends that "the Bankruptcy Court erred when it made factual and legal conclusions beyond those appropriate at a preliminary hearing," and the Bankruptcy Court "erred in failing to consider newly discovered evidence of the appraised 'as is' value of the Subject Property." *Id*. at 14, 18. YBA contends that this Court "should reverse the Bankruptcy Court's rulings and order a new trial or evidentiary hearing to consider: A. The Debtor's asserted value of $5,100,000; B. Whether equity exists in the Subject Property; C. The adequacy of Debtor's offers of adequate protection; and, D. Documentary and oral testimony on the issue of Debtor's good faith in filing the chapter 11 case." *Id*. at 23.

On June 21, 2013, IndyMac filed a brief and opposition to the suggestion that this Court withdraw the reference from the Bankruptcy Court. (ECF No. 9). IndyMac contends that the Bankruptcy Court did not abuse its discretion when granting relief at the May 9, 2013 hearing. *Id*. at 24. IndyMac contends that the Bankruptcy Court did not abuse its discretion when denying the Motion for Reconsideration because "YBA's new evidence would not change the outcome," and "YBA's evidence was discoverable before trial." *Id*. at 34, 36. IndyMac also contends that "the automatic stay has been terminated and is not subject to reinstatement." *Id*. at 39.

On June 24, 2013, YBA filed a request for judicial notice and an objection to the length of IndyMac's brief. (ECF Nos. 10, 11). On June 24, 2013, IndyMac filed a response to YBA's objection. (ECF No. 12).

On June 25, 2013, the Court heard oral argument. (ECF No. 13).

## II. Discussion

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. *See In re Conejo Enters., Inc.*, 96 F.3d 346, 351 (9th Cir. 1996).

The parties agree that the standard of review in this appeal is abuse of discretion.[1] *See id.*; *see also In re Hernandez*, 483 B.R. 713, 719 (9th Cir. B.A.P. 2012) ("A bankruptcy court's denial of a motion for reconsideration is reviewed for abuse of discretion.") (citing *First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir. 2006)). Under the abuse-of-discretion standard, if the bankruptcy court identified the correct legal rule to apply to the relief requested, the reviewing court must determine whether the bankruptcy court's "resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc); *see also In re Hernandez*, 483 B.R. at 719 (same). "In order to establish that the court abused its discretion in denying [a] motion for reconsideration on the basis of ... newly discovered

---

[1] *See* ECF No. 5 at 14; ECF No. 9 at 9.

evidence, [appellant] ha[s] to show that '(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case.'" *In re La Sierra Fin. Servs., Inc.*, 290 B.R. 718, 733 (9th Cir. B.A.P. 2002) (quoting *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 928-29 (9th Cir. 2000)).

In denying the Motion for Reconsideration, the Bankruptcy Court stated:

> Not approved. Argument in support of reconsideration motion ignores that [the] Court also premised stay relief on 'cause' (see transcript attached to opposition filed by IndyMac). Further, there is no 'newly-discovered' evidenced that could not have been discovered pre-hearing; Debtor merely asked the appraiser for different information that he could have provided.

(ECF No. 2-11 at 94). It appears that the Bankruptcy Court denied the Motion for Reconsideration on the grounds that (A) the "as is" appraisal would not have changed the outcome of the Motion for Relief from Automatic Stay because the "as is" appraisal would not affect the Bankruptcy Court's finding of "cause," and (B) the exercise of due diligence (i.e., "ask[ing] the appraiser for different information that he could have provided") would have resulted in the "as is" appraisal being available to YBA prior to the May 9, 2013 hearing.[2]

**A.   Cause**

Pursuant to 11 U.S.C. § 362(a), a bankruptcy filing imposes an automatic stay of collection efforts and foreclosure actions against the debtor. *See In re Conejo Enters.*, 96 F.3d at 351. "Upon a showing of 'cause,' a bankruptcy court shall grant relief from the automatic stay." *Id*. at 352 (quoting 11 U.S.C. § 362(d)). "'Cause' has no clear definition and is determined on a case-by-case basis." *Id*. (quotation omitted).

---

[2] There is no indication in the record that the Bankruptcy Court decided the issue of whether the "as is" appraisal of $5.1 million was a credible and accurate reflection of the "as is" value of the Property. Because the record reflects that this issue was not addressed or decided by the Bankruptcy Court, for the purposes of deciding this appeal, this Court will assume without deciding that the "as is" appraisal of $5.1 million is an accurate reflection of the "as is" value of the Property. This Court makes no finding that the "as is" appraisal is, in fact, credible and/or accurate; that determination is reserved for the Bankruptcy Court to decide on remand.

At the conclusion of the May 9, 2013 hearing, the Bankruptcy Court stated: "[F]or the reasons that are cited in the reply brief, I'm going to grant stay relief." (ECF No. 3 at 80). In its reply brief, IndyMac contended that "cause" for lifting the automatic stay existed under 11 U.S.C. § 362(d) "because IndyMac [1] lacks adequate protection, [2] there is no prospect of reorganization and [3] this case is a two-party dispute having all the elements of a bad faith filing." (ECF No. 2-8 at 15).

### 1. Adequate Protection

"[U]ndersecured creditors are entitled to adequate protection to compensate them for the depreciation in their collateral. Adequate protection prevents creditors from becoming more undersecured because of the delay that bankruptcy works on the exercise of their state law remedies." *In re Deico Elecs., Inc.*, 139 B.R. 945, 947 (9th Cir. B.A.P. 1992) (citing *United Savings Assoc. v. Timbers of Inwood Forest*, 484 U.S. 365 (1988)); *see also* 11 U.S.C. § 361(1) ("When adequate protection is required..., such adequate protection may be provided by ... requiring the trustee to make a cash payment or periodic cash payments to such entity, *to the extent that the stay ... results in a decrease in the value of such entity's interest in such property....*") (emphasis added). Lack of adequate protection of an interest in property is a potential basis of cause for relief from the automatic stay. *See* 11 U.S.C. § 362(d)(1).

At the time of the May 9, 2013 hearing, the only evidence in the record of the "as is" value of the Property was the $1.5 million figure that YBA stated in the schedules filed with the bankruptcy petition. Based upon the record, the Bankruptcy Court accepted that the Property was "massively overencumbered." (ECF No. 3 at 62). Assuming the "as is" value was $1.5 million and the Property was overencumbered, the finding of cause for relief from the automatic stay due to lack of adequate protection was supported by the record. However, assuming the "as is" appraisal of $5.1 million is credited, the Property would not be overencumbered. Assuming the $5.1 million appraisal is credited, there is no evidence in the record that the Property's value is depreciating due to moisture intrusion at such a rapid rate that there is an imminent risk that maintaining the automatic stay would result in a

decrease in the value of IndyMac's interest in the Property. *Cf.* 11 U.S.C. § 361(1); *cf. also* ECF No. 2-2 at 107 (Declaration of Kurt Grosz discussing the moisture intrusion and stating that "cost for mitigation activities ... for asset prevention work is $20,000"); ECF No. 2-4 at 5 (Declaration of Kamran Banayan stating that repairs related to the moisture intrusion would cost $120,000). Accordingly, to the extent the Bankruptcy Court found that the "as is" appraisal of $5.1 million would not affect the finding of cause related to adequate protection, this finding is "without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1263.

### 2. Lack of Effective Reorganization

The second basis of cause for relief from the automatic stay cited in IndyMac's reply brief was "under § 362(d)(2) for lack of effective reorganization" because "the Debtor clearly lacks equity in the Property." (ECF No. 2-8 at 21). Section 362(d)(2) provides that "on request of a party in interest and after notice and hearing, the court shall grant relief from the stay ... with respect to a stay of an act against property ... if — (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). However, assuming the "as is" appraisal of $5.1 million is credited, then YBA would have over $1 million in equity in the Property and granting relief from stay pursuant to § 362(d)(2) would be "without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1263.

### 3. Bad Faith

The final basis of cause for relief from the automatic stay cited in IndyMac's reply brief was that "YBA's case is a bad faith filing," and the "factors demonstrating bad faith" are present. (ECF No. 2-8 at 19, 21). At the May 9, 2013 hearing, the Bankruptcy Court stated that "the Court is not finding that the new debtor syndrome is present here," but "this case does hit nine out of ten" of "the *Arnold* factors, *Can-Alta* factors, *Stolrow* factors." (ECF No. 3 at 78, 80).

A debtor's equity in real property is not one of the ten *Little Creek* factors set out in the cases cited by the Bankruptcy Court. *Cf. Matter of Little Creek Dev. Co.*, 779 F.2d at

1072; *In re Arnold*, 806 F.2d at 939; *In re Can-Alta Props.*, 87 B.R. at 91; *In re Stolrow's*, 84 B.R. at 171. However, during the discussion of the *Little Creek* factors at the May 9, 2013 hearing, the Bankruptcy Court twice referenced YBA's lack of equity in the Property. *See* ECF No. 3 at 78-79 ("The secured creditor's lien is more than double ... the fair market value admitted by the debtor.... [T]his property is ... overencumbered ... which can't be denied.").

In *Can-Alta*, after the bankruptcy court held three days of evidentiary hearings on a creditor's motion for relief from the automatic stay, the bankruptcy court made 17 findings of fact and concluded that the automatic stay should be lifted on the basis of bad faith. *See In re Can-Alta Props.*, 87 B.R. at 90-91. The Bankruptcy Appellate Panel of the Ninth Circuit held that the bankruptcy court abused its discretion in lifting the stay because record did not support the finding of bad faith. The Bankruptcy Appellate Panel "recognize[d] that some of the indicia of bad faith are present in this case. However, other factors exist which lead us to conclude that the bankruptcy court abused its discretion in lifting the stay on the basis of bad faith." *Id*. at 92. The Bankruptcy Appellate Panel listed three factors in support of its holding that the bankruptcy court abused its discretion in finding bad faith: (1) "Importantly, this Debtor was not formed on the eve of bankruptcy as was the case in both *Little Creek* and [*In re*] *Thirtieth Place*[*, Inc.*, 30 B.R. 503 (9th Cir. B.A.P. 1983)]"; (2) "the bankruptcy petition in this case was filed only six months prior to the order lifting the stay"; and (3) "the Debtor has approximately one million dollars in equity in the subject real property which it should be given the reasonable opportunity to protect." *Id*.

In this case, YBA was not formed on the eve of bankruptcy, YBA's bankruptcy petition was filed less than six months prior to the June 6, 2013 Order lifting the stay, and—assuming the $5.1 million "as is" appraisal is credited—YBA would have over one million dollars of equity in the Property. Based upon the current record, to the extent the Bankruptcy Court found that the "as is" appraisal of $5.1 million would not affect the finding of cause related to bad faith, this finding is "without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1263.

To the extent that the Bankruptcy Court denied the Motion for Reconsideration on the basis that the "as is" appraisal would not affect the Bankruptcy Court's finding of "cause," this conclusion is "without support in inferences that may be drawn from the facts in the record." *Id.*

### B.   Due Diligence

The Bankruptcy Court also denied the Motion for Reconsideration on the grounds that the exercise of due diligence (i.e., "ask[ing] the appraiser for different information that he could have provided") would have resulted in the "as is" appraisal being available to YBA prior to the May 9, 2013 hearing. (ECF No. 2-11 at 94).

The evidence in the record relating to the timing of Bouman's "as is" and "turn key" appraisals indicates that both appraisals were ordered on April 22, 2013, 17 days prior to the May 9, 2013 hearing. (ECF No. 2-9 at 59; ECF No. 2-10 at 59). Bouman states in his declaration accompanying the "as is" appraisal that the "as is" "report was delayed due to personal time constraints, researching and reviewing stigmatic loss date, and reviewing construction cost information for the cost to complete the unfinished items and repair defective construction." (ECF No. 2-10 at 17; *see also id.* ("The second report, dated May 14, 2013, was submitted in as timely a fashion as possible given the magnitude of the assignment and the time needed to research and review data.")). The "as is" report indicates that Bouman "relied on his professional experience and conversations with other real estate professionals for input" in researching stigmatic loss. *Id.* at 28.

IndyMac has pointed to no evidence in the record refuting the statements in Bouman's declaration. Accordingly, to the extent that Bankruptcy Court denied the Motion for Reconsideration on the basis that the exercise of due diligence by YBA would have resulted in the "as is" appraisal being available to YBA prior to the May 9, 2013 hearing, the Court finds that this conclusion is "without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1263.

//

### C.   Termination of Automatic Stay

IndyMac contends that "the automatic stay has been terminated and is not subject to reinstatement." (ECF No. 9 at 39). The Bankruptcy Court did not cite this contention as a basis for denying the Motion for Reconsideration. Determination of this issue is reserved for the Bankruptcy Court to decide on remand, if necessary.

## III.  Conclusion

After review of the record and the submissions of the parties, the Court reverses the June 6, 2013 Order and remands this matter to the Bankruptcy Court for further proceedings. On remand, the Bankruptcy Court shall reconsider its Order granting the Motion for Relief from Automatic Stay in light of Bouman's "as is" appraisal, as well as the existing record and any other new evidence the Bankruptcy Court allows the parties to present. This Court makes no finding that Bouman's "as is" appraisal is, in fact, credible and/or accurate; that determination is reserved for the Bankruptcy Court to decide on remand.

IT IS HEREBY ORDERED that the June 6, 2013 Order is reversed and this matter is remanded to the Bankruptcy Court for further proceedings. The Clerk of the Court shall close this case.

DATED: June 28, 2013

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge